**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

_____

No. 94-30126

_____


IN RE:  TAXABLE MUNICIPAL BOND SECURITIES LITIGATION.

LARRY ANDERSON,

                                        Plaintiff-Appellant,


                          VERSUS


KUTAK, ROCK AND CAMPBELL, ET AL.,

                                        Defendants,

KUTAK, ROCK AND CAMPBELL, ET AL.,

                                        Defendants-Appellees.


_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

(April 21, 1995)

Before POLITZ, Chief Judge, GARWOOD and BENAVIDES, Circuit
Judges.

BENAVIDES, Circuit Judge:

     Plaintiff-Appellant Larry Anderson ("Anderson") appeals the

dismissal of his class action suit based on alleged violations of

Racketeer Influenced and Corrupt Organizations Act ("RICO"),

1

Title IX of the Organized Crime Control Act of 1970, Pub.L. No. 91-452, 84 Stat. 922 (codified at 18 U.S.C. § 1961 et seq.). Finding that Anderson has no standing to bring the RICO claims, we affirm the dismissal of Anderson's suit.

FACTS AND PROCEDURAL HISTORY

MDL 863 (The Suit by Bondholders)

This appeal requires an understanding of the pertinent facts and procedural history of a previously filed class action multi-district litigation ("MDL") suit before the District Court for the Eastern District of Louisiana. Accordingly, before we chronicle the history of appellant Anderson's RICO claim, we review the facts and procedural history of the previous claim in MDL 863.

In 1983, the Nebraska state legislature created the Nebraska Investment Authority ("NIFA") to encourage agricultural and other economic development. Neb. Rev. Stat. §§ 58-202, 58-207. On October 27, 1986, NIFA enacted a resolution authorizing the issuance of two series of taxable municipal bonds collectively worth $200,000,000 ("NIFA Bonds"). On November 13, 1986, NIFA issued the NIFA Bonds. According to the offering materials, the bond proceeds would be used to establish a fund for the purchase of agricultural loans from banks in Nebraska.

Drexel Burnham Lambert & Co. ("Drexel") led an underwriting syndicate that underwrote and initially sold the NIFA Bonds to the public. After the underwriters' purchase of the bonds, the

2

indenture trustee, defendant Norwest Bank, Minneapolis, N.A. ("Norwest"), used the proceeds to purchase Guaranteed Investment Contracts ("GICs") from Executive Life Insurance Company ("ELIC"). ELIC in turn invested the proceeds from the sale of the GICs in junk bonds, even though the bond offering materials did not disclose such an investment. At the time the NIFA Bonds were issued, Standard & Poor's assessed ELIC a claims paying rate of AAA. After the collapse of the junk bond market in early 1989, Standard & Poor's downgraded ELIC's rating, and the value of the bonds declined. In April 1991, the California Insurance Commissioner placed ELIC into conservatorship and stopped interest payments under the GICs. The NIFA Bonds subsequently defaulted.

The NIFA Bond issue was similar in structure to seven other taxable municipal bond issues that came on the market between July and November 1986 for purposes of establishing funds for the purchase of housing or agricultural loans. The proceeds from each of these bond issues were placed in ELIC GICs. Drexel led the underwriting syndicates in six of these bond issues. The First Boston Corporation led the underwriting syndicate in the seventh bond issue. Otherwise, the issuers, indenture trustees and underwriting groups for each of the bond issues varied. Together, the total amount raised by these eight bond offerings was $1,850,000,000.

As the bonds from these eight issuances declined in value, litigation ensued. As early as April 1990, before the conservatorship of ELIC, holders of the NIFA Bonds and the seven

other municipal bonds filed class action lawsuits alleging securities fraud and RICO violations.  On November 29, 1990, the Judicial Panel on Multi-district Litigation ("JPMDL"), pursuant to 28 U.S.C. § 1407, transferred twelve putative class action bondholder suits pending in seven federal districts to the Eastern District of Louisiana for consolidated pretrial proceedings under the caption In Re Taxable Municipal Bond Securities Litigation, MDL 863 ("MDL 863").

Pursuant to the district court's pretrial orders, the plaintiff bondholders in MDL 863 filed a separate class action complaint asserting the RICO claims premised on an alleged scheme to trick investors into thinking they were buying safe, low-risk municipal bonds when they were actually buying junk bonds.  The plaintiff bondholders in MDL 863 alleged that Drexel, ELIC and defendant Kutak, Rock & Campbell ("Kutak"), NIFA's counsel, devised a plan to use the issuance of municipal bonds as a scheme to create capital for ELIC.  According to this theory, the defendants portrayed the GICs as a credit enhancement, but in reality, the GICs were a means of funneling the proceeds of the bond offerings into ELIC for the life of the bonds.  In order to ensure that the bond proceeds remained under ELIC's control, the defendants allegedly sought to make it virtually impossible to borrow from the loan fund established by the bond proceeds, thereby preventing any significant call on the funds invested with ELIC.

To further this goal, the plaintiffs maintained, the defendants found friendly entities to act as administrators of the

loan programs. For the NIFA offering, Norwest, the indenture trustee, allegedly agreed to act as administrator of the NIFA loan program with knowledge that there would likely be no loans. Drexel recruited municipalities and agencies with the legal authority to float bond offerings. After recruiting a municipal agency, the group would enlist other players such as the members of the underwriting syndicate and a friendly trustee (Norwest for the NIFA Bonds).

Based on these facts alleged by the MDL 863 plaintiffs, the RICO complaint alleged that the defendants participated in the affairs of a RICO enterprise in violation of 18 U.S.C. § 1962(c) and a conspiracy under 18 U.S.C. § 1962(d) to violate § 1962(c). The MDL 863 plaintiffs asserted alternative RICO enterprise theories. The complaint first alleged that the RICO defendants formed an association-in-fact to issue taxable municipal bonds for the fraudulent purpose of investing the proceeds in the junk bond market. Alternatively, the MDL 863 plaintiffs alleged that each of the municipal issuers constituted a separate RICO enterprise. The defendants in MDL 863 moved to dismiss the plaintiff bondholders' RICO class action complaint. In a May 18, 1992 order, the district court rejected the plaintiffs' association-in-fact theory under § 1962(c). The district court, however, permitted the bondholder plaintiffs to proceed with discovery on their alternative theory that each municipal issuer constituted a separate RICO enterprise and on their RICO conspiracy theory.

On August 27, 1993, the plaintiff bondholders, including the

5

purchasers of NIFA Bonds except for Washington National Insurance Company and Washington National Insurance Company of New York (collectively "WNIC"), agreed to voluntarily dismiss the RICO class action complaint in light of the Supreme Court's decision in Reves v. Ernst & Young, 113 S. Ct. 1163 (1993). WNIC, however, refused to dismiss its RICO claims based on its purchase of NIFA Bonds. The defendants moved for summary judgment on WNIC's RICO claims. WNIC opposed the defendants' motion and also sought to file an amended RICO complaint. In a December 13, 1993 order, the district court granted defendants' motion for summary judgment, dismissed WNIC's RICO claims and refused to permit WNIC to file its proposed amended complaint.

## Anderson's RICO Suit (The Farmers' and Ranchers' Claim)

On July 6, 1993, in the midst of the MDL 863 litigation and after the district court rejected the bondholders' association-in-fact enterprise theory, Anderson, the plaintiff in the instant case, filed a three-count RICO complaint in federal district court in Nebraska, asserting that the NIFA Bonds were issued in 1986 as part of a fraudulent scheme in violation of federal law. Anderson is a Nebraska farmer who never purchased or owned NIFA Bonds. He filed this action individually and on behalf of other small Nebraska farmers and ranchers alleged to be unable to obtain agricultural loans because of the defendants' actions. On November 17, 1993, Anderson amended his complaint as of right. On December 2, 1993, the JPMDL transferred Anderson's RICO claims against the

6

defendants to the Eastern District of Louisiana as a tag-along action because the claims involved common questions of fact with the actions in MDL 863.

The district court concluded that Anderson's complaint and the MDL 863 RICO complaint were identical in all relevant respects. The only distinction found by the district court was in the class of plaintiffs purportedly represented: the MDL 863 plaintiffs were the bond purchasers, whereas the Anderson plaintiffs were Nebraska farmers allegedly unable to obtain loans. The first two counts of Anderson's amended complaint allege violations of 18 U.S.C. § 1962(c) based on alternative allegations of a RICO enterprise. The first count asserts an association-in-fact enterprise theory, and the second count alleges that NIFA itself constitutes a RICO enterprise. The third count alleges that, under either RICO enterprise theory, the defendants conspired in violation of § 1962(d).

In a February 2, 1994 order in connection with its dismissal of the WNIC action, the district court considered the fate of the Anderson tag-along action, even though the defendants had not answered or moved to dismiss the Anderson complaint. The district court recited the Pretrial Order governing tag-along actions consolidated with MDL 863:

In each pending case and in the subsequently filed, removed, or transferred cases, the motions which the court has already considered in one or more of the pending cases shall be deemed filed on behalf of each party with interests similar to the movant. This provision does not preclude a renewal or re-argument of such motions based on particular circumstances of an individual case.

The district court found that no special circumstances warranted reargument and reiterated its finding that the Anderson allegations were identical to the allegations in the MDL 863 RICO complaint, which was dismissed on summary judgment. Therefore, in accordance with the Pretrial Order, the district court concluded that the "dismissal of the Anderson action is proper for the same reasons dismissal of the RICO claims in MDL 863 was proper."

Anderson appeals the district court's ruling.


## STANDING TO PRESENT A RICO CLAIM


Although the district court did not address the standing issue raised by appellees, we may determine this appeal on this issue because "[s]tanding represents a jurisdictional requirement which remains open to review at all stages of the litigation." National Org. for Women, Inc. v. Scheidler, 114 S. Ct. 798, 802 (1994).

The standing provision of civil RICO provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains." 18 U.S.C. § 1964(c). Anderson claims that his injury is the lost opportunity to obtain an agricultural loan from the proceeds of the NIFA Bonds. Anderson contends that the farmers and ranchers had a legal entitlement to participate in a nonfraudulent loan program, as the Nebraska legislature created and authorized NIFA to ameliorate the farmers' economic difficulties. We disagree and find that Anderson has not

8

fulfilled the standing requirements at two separate levels.


I.

ELIGIBILITY FOR THE NIFA LOANS


Anderson is not representative of the class. Because he has not shown how he could qualify under any NIFA loan program, Anderson cannot show how he has become entitled to its benefits. Anderson thereby does not share the same interests and has not suffered the same harms as the class members he contends were injured by the scheme.

Although Anderson claims that the restrictions imposed by the eligibility requirements were part of the fraudulent scheme, Anderson has not shown how he qualifies under the requirements imposed by the Nebraska legislature. In other words, even if there had been no fraud and the NIFA Bond proceeds were used properly to fund loans, Anderson has not shown his eligibility to receive the loans. Under the Nebraska statute governing the NIFA Bond loan program, "only those borrowers who are unable to obtain credit from the conventional farm credit markets or other sources will receive loans." Neb. Rev. Stat. § 58-244(10). Nowhere is it alleged that Anderson was unable to obtain credit from other sources. In fact, at the time of suit, Anderson had already obtained credit from other sources, thereby making him ineligible for the loans. Further, paragraphs 111 and 115 of Anderson's amended complaint suggest that several putative class members have obtained credit

9

from other agricultural lenders. Thus, they are ineligible to participate in the NIFA Bond loan program and cannot claim injuries stemming from not being able to obtain loans from the proceeds of the NIFA Bonds.

Anderson responds by arguing that, although some of the class members are not eligible for the loans, the class as a whole is entitled to the loans. Anderson, however, has not presented any case law supporting his argument. Further, it is well-established that

> [t]o have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents.

Schlesinger v. Reservists Comm. to Stop the War, 94 S. Ct. 2925, 2930 (1974). Because Anderson has not demonstrated how he cannot obtain credit from other agricultural lenders, Anderson cannot prove his eligibility for the NIFA Bonds and does not have standing to bring suit in this action.


II.

NO DAMAGES - NO INJURY


In the alternative, even if Anderson has properly alleged his eligibility for the NIFA Bonds and is the proper representative of the class, Anderson and the entire class of farmers and ranchers have not suffered any damages. They have not been "injured" as a result of the RICO violation, a necessity for standing under RICO.

Anderson has not shown how the RICO scheme has injured farmers

10

and ranchers. He has not shown that the farmers and ranchers applied for the NIFA Bond loans and were refused. Nonetheless, Anderson argues that the plaintiffs have suffered damages in the amount of the difference between the low interest rate of the NIFA bond loans and the higher interest rates now being paid by the farmers and ranchers on other credit. However, the very fact that such farmers and ranchers are paying higher interest rates on other loans makes them ineligible for the NIFA Bond loans, as such farmers and ranchers have necessarily been able to obtain other credit and are ineligible for the NIFA loans. They have suffered no injury from not receiving what they were ineligible to receive.

Anderson's contention that he has sustained a lost "opportunity" to obtain a NIFA loan by itself is too speculative to constitute an injury. We are not persuaded by Anderson's argument of a RICO injury based on his reliance on Standardbred Owners Ass'n v. Roosevelt Raceway Assocs., L.P., 985 F.2d 102 (2d Cir. 1993). In Standardbred, the defendant purchased a horse racing facility with financing from bonds issued by a municipality, id. at 103. In its application for financing, the defendant stated that it intended to continue racing operations at the facility. Id. The defendant also gave assurances to the plaintiffs that racing would continue. Id. at 103-04. The defendant, however, discontinued racing on the property. Id. at 104. The court held that the plaintiffs had standing to bring a RICO action, as "in the fraudulently induced belief that racing would continue, plaintiffs purchased, relocated and reconstructed capital equipment for use at

11

the track, and designed their purchases and training of horses with the intent to race them at the track." Id. at 104-05. In contrast, there is no allegation in the instant case that the farmers and ranchers acted in any way in reliance upon a representation by the defendants that the bond proceeds would be used to finance low interest agricultural loans.

Anderson also contends that the plaintiffs have a legal entitlement to the benefits of the NIFA Bond proceeds because the Nebraska legislature authorized the creation of NIFA to benefit the plaintiffs. In support of his proposition, Anderson cites Jackson Dist. Library v. Jackson County #1, 380 N.W.2d 112 (Mich. Ct. App. 1985), in which a library was allowed to sue for tax revenues that voters had specifically approved for the library, id. at 113-14. Jackson did not concern a RICO action or damages under RICO, but the question of whether the library was an "eligible authority" under Michigan law and thus entitled by state statute to a share of the tax revenues. The case is clearly not on point. Anderson also cites AAMCO Transmissions, Inc. v. Marino, Nos. 88-5522, 88-6197, 1992 WL 38120 (E.D. Pa. Feb. 20, 1992), which held that lost profits were recoverable under RICO, id. at *5-*6. Here, however, Anderson has not alleged lost profits. Rather, he only alleges a lost opportunity to borrow at a low interest rate.

Even if Anderson was eligible and had shown how the opportunity to borrow at a low interest rate would have benefited him, Anderson's claimed damages would have required extensive speculation and would not simply entail a calculation of present,

12

actual damages. Such speculative damages are not compensable under RICO, Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 24 (2d Cir. 1990) (holding that "injury in the form of lost business commissions . . . is too speculative to confer standing, because Hecht only alleges that he would have lost commissions in the future, and not that he has lost any yet"), and the legal entitlement claim that Anderson brings is precisely the type of "intangible property interest" that RICO does not protect, Steele v. Hospital Corp. of Am., 36 F.3d 69, 70 (9th Cir. 1994) (holding that, for RICO standing, the plaintiffs must prove a "concrete financial loss," an actual loss "of their own money," and "not mere `injury to a valuable intangible property interest'"). Anderson has not alleged that the plaintiffs have ever lost any money as a result of the RICO scheme. Oscar v. University Students Co-op. Ass'n, 965 F.2d 783, 786 (9th Cir.), cert. denied, 113 S.Ct. 655 (1992) and 113 S.Ct. 656 (1992), (holding that the plaintiff had not alleged any financial loss necessary for RICO standing because "[t]he only injury she has alleged is a `decrease in the value of her property,'" and not "any out-of-pocket expenditures as a direct or indirect result of the" RICO scheme).

At best, Anderson's suit shows only a lost opportunity to obtain a NIFA loan. Such lost opportunity by itself does not constitute an injury that confers standing to bring a RICO cause of action. Likewise, because the alleged injury is speculative and does not show a conclusive financial loss, we hold that Anderson's RICO suit fails for lack of standing.

13

CONCLUSION

Because Anderson and the Nebraska farmers and ranchers described in Anderson's class action suit have no standing to bring the instant RICO action, we **AFFIRM** the district court's action in dismissing Anderson's claims.