REVISED – May 20, 1998

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 97-10623
(Summary Calendar)
_____

STEVEN PRICE, BRUCE LAXER,
LANCE KUBA, and JEFFREY FISHMAN,
On Behalf of Themselves and All
Other Similarly Situated Persons,

                                   Plaintiffs-Appellants,

                    versus

PINNACLE BRANDS, INC.,

                                   Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

April 22, 1998

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

     Plaintiffs-Appellants Steven Price, Bruce Laxer, Jeffrey Fishman, and Lance Kuba, on behalf of themselves and all other similarly situated persons (collectively, plaintiffs), appeal the district court's dismissal of their purported class action against Defendant-Appellee Pinnacle Brands, Inc. (Pinnacle) brought pursuant to the Racketeer Influenced and Corrupt Organizations Act

(RICO).[1]  Plaintiffs assert that the district court erred in (1) holding that they had not pled a cognizable injury under RICO, and therefore did not have standing, and (2) refusing to allow them to amend their complaint to correct the perceived deficiency.  After a review of the record and the arguments of counsel, we find no reversible error and, accordingly, affirm.

I.

FACTS AND PROCEEDINGS

Pinnacle is a leading manufacturer of sports trading cards, especially football, baseball, hockey and motor sports cards. These trading cards employ names, likenesses, and other images of athletes and sports teams whose rights are licensed to Pinnacle for use in connection with the cards.  Pinnacle sells its cards in packages of six to twenty cards, one or more of which might be "chase" cards,[2] rare and valuable collectibles which are randomly inserted in some of the packages.  The odds of a chase card being included are printed on each package.

Plaintiffs are individuals who have purchased Pinnacle trading cards for themselves or their children, and who purport to represent a class consisting of "[a]ll original end-use purchasers of sports cards marketed by Pinnacle Brands, Inc. . . . within the four years prior to the filing of this Complaint."  Plaintiffs assert that they purchase packages of Pinnacle cards in search of

---

[1]18 U.S.C. §§ 1961-68 (1991).

[2]These cards are referred to as "chase cards" because collectors allegedly "chase" these limited edition cards.

chase cards, and allege that Pinnacle's marketing of its chase cards comprises all the elements of illegal gambling: (1) consideration ("persons must purchase card packages in order to try to win a valuable chase card");[3] (2) chance ("valuable chase cards are randomly inserted in the packages"); and (3) a prize ("chase cards have, and are perceived by class members to have, value, and obtaining a chase card in a package is winning a prize").

Plaintiffs filed suit in district court in July 1996, asserting claims against Pinnacle for violations of §§ 1962(a)-(d) of RICO.[4] They sought to recover treble damages pursuant to

_____

[3]Plaintiffs also contend in their complaint that there is no alternative free means of obtaining an opportunity to win a chase card, e.g., through a postcard mail-in.

[4]Section 1962 provides, in relevant part:

(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(b) It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

(d) It shall be unlawful for any person to conspire to

3

§ 1964(c) and to enjoin Pinnacle from continuing to market its sports cards in ways that violate RICO and state and federal gambling laws.[5]  In August 1996, the court ordered plaintiffs to file a RICO case statement setting forth in more detail and specificity the facts on which plaintiffs relied in their RICO complaint.  Plaintiffs timely filed this statement.  In September 1996, Pinnacle filed a motion to dismiss the complaint pursuant to

violate any of the provisions of subsection (a), (b), or (c) of this section.

"Racketeering activity" is defined as
      any act or threat involving . . . gambling . . . which is
      chargeable under State law and punishable by imprisonment
      for more than one year; . . . [and] any act which is
      indictable under any of the following provisions of title
      18, United States Code: . . . section 1952 (relating to
      racketeering), section 1953 (relating to interstate
      transportation of wagering paraphernalia), . . . section
      1955 (relating to the prohibition of gambling businesses)
      . . . .

18 U.S.C. § 1961(1).

[5]Although not raised by the district court or either party, there is some question whether RICO affords private litigants the option of equitable remedies.  Compare Religious Tech. Ctr. v. Wollersheim, 796 F.2d 1076, 1080-89 (9th Cir. 1986) (expressly holding that injunctive relief was not available under RICO), cert. denied, 479 U.S. 1103, 107 S. Ct. 1336, 94 L. Ed. 2d 187 (1987) and Dan River, Inc. v. Icahn, 701 F.2d 278, 290 (4th Cir. 1983) (noting "substantial doubt whether RICO grants private parties . . . a cause of action for equitable relief") with Bennett v. Berg, 685 F.2d 1053, 1064 (8th Cir. 1982) (injunctive relief possibly available), aff'd on reh'g, 710 F.2d 1361 (8th Cir.) (en banc), cert. denied, 464 U.S. 1008, 104 S. Ct. 527, 78 L. Ed. 2d 710 (1983).  This court, while stating that "[w]e find the analysis contained in the Wollersheim opinion persuasive," In re Fredeman Litig., 843 F.2d 821, 830 (5th Cir. 1988), has specifically reserved ruling on "whether all forms of injunctive relief and other equitable relief are foreclosed to private plaintiffs under RICO."  Id.  As plaintiffs have not raised any issues on appeal regarding the availability of injunctive relief, and considering our affirmance of the district court's dismissal of their action, we need not — and therefore do not — address this question here.

4

Federal Rules of Civil Procedure (FRCP) 12(b)(1) and 12(b)(6), to which plaintiffs responded. In April 1997, the district court granted Pinnacle's motion, dismissed the complaint with prejudice, and entered final judgment in favor of Pinnacle, holding that plaintiffs had failed to allege that they had been injured in their "business or property" as required by § 1964(c) of RICO, and that they therefore lacked standing to sue. After their motion to vacate the judgment or for reconsideration was denied, plaintiffs timely appealed.

## II.

## DISCUSSION

### A. Standard of Review

We review <u>de novo</u> the district court's dismissal of plaintiffs' complaint, accepting as true all well-pleaded facts in the complaint and viewing them in the light most favorable to plaintiffs.[6] The district court's refusal to allow plaintiffs leave to amend their complaint is reviewed for abuse of discretion.[7]

### B. RICO Claim

RICO provides a private civil action to recover treble damages for injury suffered as a result of a violation of its substantive

---

[6]<u>Capital Parks v. Southeastern Adver. & Sales Sys.</u>, 30 F.3d 627, 629 (5th Cir. 1994); <u>Rubenstein v. Collins</u>, 20 F.3d 160, 166 (5th Cir. 1994).

[7]<u>World of Faith World Outreach Ctr. Church, Inc. v. Sawyer</u>, 90 F.3d 118, 124 (5th Cir. 1996), <u>cert. denied</u>, 117 S. Ct. 1248, 137 L. Ed. 2d 329 (1997).

provisions.[8] To state a civil RICO claim under § 1962, a plaintiff must allege: (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.[9] As a preliminary matter, however, a plaintiff must establish that he has standing to sue. "The standing provision of civil RICO provides that '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains.'"[10] Thus, a RICO plaintiff must satisfy two elements — injury and causation. In dismissing this action, the district court concluded that plaintiffs had not suffered any injury to their business or property.

In their complaint, plaintiffs contend that they spent money to purchase Pinnacle's trading cards. They also allege that "[a]s a direct and proximate result of Pinnacle's violations of [18 U.S.C. §§ 1962(a)-(d)], members of the plaintiff class have been injured in their business or property." They insist that these allegations are sufficient to satisfy the RICO standing requirement: "'At the pleading stage, <u>general factual allegations</u> of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace

---

[8]<u>Sedima, S.P.R.L. v. Imrex Co., Inc.</u>, 473 U.S. 479, 481 (1985).

[9]<u>Elliott v. Foufas</u>, 867 F.2d 877, 880 (5th Cir. 1989) (citing <u>Sedima</u>, 473 U.S. at 496).

[10]<u>In re Taxable Mun. Bond Sec. Litig.</u>, 51 F.3d 518, 521 (5th Cir. 1995) (quoting 18 U.S.C. § 1964(c)).

those specific facts that are necessary to support the claim.'"[11]

Moreover, plaintiffs insist that, inasmuch as "RICO requires that the gambling activity be 'chargeable under state law,'"[12] the district court should have looked to applicable state law to measure Pinnacle's wrongdoing and plaintiffs' standing to sue. Specifically, plaintiffs urge that the district court should have followed the methodology employed by the California district court in Schwartz v. Upper Deck, a similar class action against a different card manufacturer, and analyzed the laws of New York and New Jersey, the states where plaintiffs reside and made their trading card purchases.[13] Such an analysis, they maintain, would have led the district court in Texas to conclude —— as did the court in Upper Deck —— that both New York and New Jersey recognize a person's property interest in money spent on games of chance and authorize civil actions to recover such funds.[14]

Pinnacle counters —— and we, like the district court, agree —— that plaintiffs' conclusional allegations, unaccompanied by assertions of even general facts to show injury, fail to satisfy

---

[11]National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 256, 114 S. Ct. 798, 803, 127 L. Ed. 2d 99 (1994) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992)) (emphasis added).

[12]Schwartz v. Upper Deck Co., 956 F. Supp. 1552, 1555 (S.D. Cal. 1997) (internal citation omitted) (Upper Deck 1).

[13]See id.; Schwartz v. Upper Deck Co., 967 F. Supp. 405, 411-15 (S.D. Cal. 1997) (Upper Deck II).

[14]See Upper Deck II, 967 F. Supp. at 414-15 (citing N.Y. Gen. Oblig. Law § 5-423 (McKinney 1989) and N.J. Stat. Ann. § 2A:40-5 (West 1987)).

the RICO standing requirement.[15] Pinnacle disputes plaintiffs'
assertion that they were injured in the amount spent for trading
cards, insisting that the pleadings show no "tangible financial
loss" to plaintiffs.[16] To this contention of plaintiffs, Pinnacle
responds that plaintiffs received a pack of trading cards for their
money; "[t]hey got exactly what they paid for and they do not and
cannot allege otherwise."

Pinnacle maintains that the district court was not required to
apply New York and New Jersey law to determine whether plaintiffs
had standing. Pinnacle acknowledges that, if we were deciding
whether it had committed a state law predicate act, application of
the state gambling laws would be necessary. It argues, however,
that this analysis is irrelevant to plaintiffs' standing under
RICO; the fact that a victim of gambling in New York or New Jersey
has a state law remedy to recover an amount equal to a multiple of
the money spent to gamble does not make plaintiffs' claim for its
consideration a property loss under RICO. Pinnacle notes further
that in the event we should conclude that state law is applicable,
we should follow Fishman v. Marvel Entertainment Group[17] and

_____

[15]See Elliott, 867 F.2d at 881.

[16]Oscar v. University Students Co-op. Assoc., 965 F.2d 783, 785
(9th Cir.) (en banc), cert. denied, 506 U.S. 1020, 113 S. Ct. 655,
121 L. Ed. 2d 581 (1992); see also In re Taxable Mun. Bond Sec.
Litig., 51 F.3d at 522-23 ("[B]ecause the alleged injury is
speculative and does not show a conclusive financial loss, we hold
that [plaintiff]'s RICO suit fails for lack of standing.").

[17]No. 96 Civ. 3757 (E.D.N.Y. Aug. 1997).

<u>Sullivan v. The Topps Co.</u>,[18] cases identical to this one but against different card manufacturers, in which a federal district court sitting in New York ⸺ one of the states whose law is alleged to control ⸺ determined that the New York and New Jersey statutes did not confer RICO standing on plaintiffs.[19]

Our review of the record and the relevant law convinces us that Pinnacle has the prevailing argument. We agree with the district court that "[p]laintiffs do not allege that they received something different than precisely what they bargained for: six to twenty cards in a pack with a chance that one of those cards may be of Ken Griffey, Jr." Injury to mere expectancy interests or to an "intangible property interest" is not sufficient to confer RICO standing.[20] Furthermore, as noted by the court, even if a pack does not contain a chase card, "[p]laintiffs do not allege that the value of the cards that they did receive is less than the

---

[18]No. 96 Civ. 3779 (E.D.N.Y. Aug. 1997).

[19]<u>See</u> <u>Marvel</u> and <u>Topps</u>, unpublished Memorandum and Order at 13 (E.D.N.Y. Aug. 1997) (citing <u>Harris v. Economic Opp. Comm'n</u>, 575 N.Y.S.2d 672, 676 (App. Div. 1991), for the proposition that allowing recovery of gambling losses in New York is a statutorily created exception to the common law rule that prohibits the recovery of gambling losses, and noting that the New York and New Jersey statutes allow for recovery of gambling losses only in very limited circumstances).

[20]<u>See</u> <u>In re Taxable Mun. Bond Sec. Litig.</u>, 51 F.3d at 523 (citing <u>Steele v. Hospital Corp. of Am.</u>, 36 F.3d 69, 70 (9th Cir. 1994)); <u>Heinhold v. Perlstein</u>, 651 F. Supp. 1410, 1411 (E.D. Pa. 1987). Likewise, it is undisputed that, to the extent that plaintiffs claim they were injured through a gambling habit or addiction, they do not have standing under § 1964(c), as there is no recovery under RICO for personal injuries. <u>See</u> <u>Oscar</u>, 965 F.2d at 785-86; <u>Allman v. Philip Morris, Inc.</u>, 865 F. Supp. 665 (S.D. Cal. 1994).

9

consideration paid."[21] And even though courts may look to state law to determine, for RICO purposes, whether a property interest exists,[22] it does not follow that any injury for which a plaintiff might assert a state law claim is necessarily sufficient to establish a claim under RICO.[23]

Finally, plaintiffs failed adequately to allege the causation element of RICO standing. Section 1964(c) requires that a compensable injury be "by reason of" the defendant's substantive violations — here, Pinnacle's alleged illegal gambling. Plaintiffs assert that they paid money for trading cards, but fail to allege in their complaint that this money was paid for a chance at a chase card. Absent such an allegation, they have shown no financial loss "by reason of" the gambling scheme.[24]

Plaintiffs argue in the alternative that the district court abused its discretion in denying them leave to amend their complaint to correct any deficiency. Whereas FRCP 15(a) "'evinces a bias in favor of granting leave to amend,' [such leave] is not

---

[21]See In re Taxable Mun. Bond Sec. Litig., 51 F.3d at 521; Heinhold, 651 F. Supp. at 1411-12 (holding that plaintiff failed to allege RICO injury by asserting that defendant misrepresented the value of a diamond, but failing to allege that the diamond was worth less that what plaintiff paid for it).

[22]See Doe v. Roe, 958 F.2d 763, 768 (7th Cir. 1992).

[23]See Heinhold, 651 F. Supp at 1412 ("[T]hat plaintiff cannot proceed under RICO does not mean that he has no remedy for the harm defendant allegedly caused him. It means only that plaintiff must proceed pursuant to a statute or common law cause of action under which he has standing to sue.").

[24]See Upper Deck I, 956 F. Supp. at 1558-59.

10

automatic."[25]  In deciding whether to allow amendment, a district court "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment."[26]  The district court in this case, weighing these factors, concluded that

> Plaintiffs are represented by able counsel and have had three opportunities to articulate their damage theory —— in the complaint, the RICO case statement, and brief in response of the motion to dismiss.  Pinnacle should not be subjected to any further costs of litigation in this lawsuit.

We perceive no abuse of discretion in this reasoning, and therefore affirm the district court's denial of plaintiffs' motion to amend.

III.

CONCLUSION

Although we ultimately decline to reverse the district court, we wish to express here our appreciation of the well-delineated arguments set forth in the excellent appellate briefs of counsel for both parties.  As for our affirmance, in addition to the reasons set forth by the district court, we find comfort in the fact that, of the many suits of this nature that have been filed around the country against trading card manufacturers and their licensors, all but two have been dismissed with prejudice.  We also

---

[25]In re Southmark Corp., 88 F.3d 311, 314 (5th Cir. 1996) (quoting Dusouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981)), cert. denied, 117 S. Ct. 686, 136 L. Ed. 2d 611 (1997).

[26]Id. at 314-15 (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

note that many of those suits were decided by courts in New York and New Jersey, the siti of the laws on which plaintiffs base the predicate acts for their RICO claims. Accordingly, for the foregoing reasons, the judgment of the district court dismissing plaintiffs' RICO claims with prejudice is, in all respects, AFFIRMED.