In the
United States Court of Appeals
for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

F I L E D
January 4, 2008

Charles R. Fulbruge III
Clerk

m 06-40364

JOHN S. CLARK,
INDIVIDUALLY AND AS TRUSTEE OF THE JOHN S. AND LORETTA J. CLARK TRUST,

Plaintiff-Appellant,

VERSUS

DONALD DOUGLAS,
ALSO KNOWN AS DONNIE DOUGLAS;
CHERYL WALKER DOUGLAS;
CADDO CREEK PRODUCTION, INC.,
A TEXAS CORPORATION;
LYLE J. BRANDON; LANA ROBERTS BRANDON,

Defendants-Appellees.

Appeals from the United States District Court
for the Eastern District of Texas
m 4:05-CV-290

Before GARWOOD, SMITH, and DEMOSS,
  Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

John Clark appeals the dismissal of this civil RICO action pursuant to Federal Rule of Civil Procedure 12(b)(6) and the denial of relief under Federal Rule of Civil Procedure 60(b). We affirm.

I.

Clark makes the following allegations as part of the RICO case statement filed in support of his complaint: On September 5, 1998, defendant Donald Douglas contacted Clark about investing in oil well production managed by Caddo Creek Production, Inc. ("Caddo Creek"), an oil and gas business of which Douglas was an officer, director, and shareholder. Based on Douglas's representation that he had significant experience in the oil and gas industry, Clark, individually and as trustee for the John S. and Loretta J. Clark Trust ("the trust"), agreed with Douglas that Lockout Corporation/21st Century Marketing, Inc. ("Lockout"), would provide Clark with a 50% interest in the production of five wells (a "five well package" to be transferred to the trust by Lockout representative Elvis Clint McBay); Lockout would operate the wells and market the production therefrom at no cost to the trust; and the trust would pay $85,000 to Lockout, McBay, and Douglas.

Clark alleges that he paid the initial $85,000 fee, then another $30,000 to Caddo Creek, before he agreed with Douglas and McBay to the terms of a second lease package. Clark contends that the second lease package contained the following terms pursuant to an oral agreement: (1) The trust would acquire the surface rights for, and the working interest in, the Temple-Inland Lease; (2) Douglas and Caddo Creek would operate the more than fifteen wells on the Temple-Inland Lease at their sole expense; (3) the trust would obtain the working interests in the T.O. Meaux Lease, the Compass-Moore Lease, the McClinton (South 25 Acres) Lease, the McKinney Lease, the Kalos Lease, the Crawford 5 Lease, the Garrison Lease, and the 9.99% override on the McClinton (South 25 Acres) Lease from T. Johnson, Ltd.; (4) Douglas and Caddo Creek would operate the wells on these leases at their sole expense; and (5) after the trust received the return of all its investment, revenues would be shared equally between the trust and Douglas/Caddo Creek.

Clark further avers that, pursuant to the second agreement, he paid $835,000 to T. Johnson, Ltd., and received a warranty deed purporting to grant title to the properties described above. A few months later, Douglas and McBay informed Clark that all the leases except the Temple-Inland lease were "doggy leases" subject to plugging liabilities; they advised Clark to dispose of the leases so as to avoid these liabilities. Clark then asserts that he tried to transfer the leases to a third party but that someone altered the McClinton Lease and the override assignments to reflect that T. Johnson, Ltd., was the grantee. T. Johnson, Ltd., subsequently assigned its interest to McBay.

In May 2001, Douglas, his wife Cheryl, Caddo Creek, Lyle Brandon, and Lana Brandon altered a copy of the June 16, 1999, assignment, naming Caddo Creek, rather than the trust, as owner of the Temple-Inland

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

Lease. They then sold an interest in that lease to a third party for $100,000.

Around June 2001, Douglas and McBay entered into an agreement with William M. Knollenberg, an oilman to whom Douglas had introduced Clark. Under the agreement, Knollenberg issued five million shares of common stock in National Equities Holdings, Inc. ("NEHI"), a company of which Knollenberg was president, to Douglas and McBay, in exchange for which Douglas, Caddo Creek, McBay and Lockout transferred interests in the Temple-Inland Lease to third parties at the direction of Knollenberg. In October 2002, Knollenberg, on behalf of NEHI, offered to purchase from Clark the trust's interest in the Temple-Inland Lease; Clark rejected the offer.

Thereafter, however, McBay and Knollenberg arranged for NEHI and two other companies allegedly controlled by Knollenberg to form limited partnerships to drill wells on the Temple-Inland Lease. Third parties invested in the partnerships.

## II.

NEHI and two other companies controlled by Knollenberg sued Clark individually and as trustee of the trust in Texas court for breach of contract, quantum meruit, and promissory estoppel; eventually McBay and Lockout were joined as defendants. Clark filed the instant action, seeking damages for RICO violations,[2] common law fraud, and conversion; Clark also seeks an accounting.

The district court dismissed this action pursuant to rule 12(b)(6), acting on motions to dismiss filed by McBay, Lockout, NEHI, Virgin America Energy Corporation, MPCC Inc.,

and the Knollenbergs. Donald Douglas, Cheryl Douglas, Caddo Creek, and Lyle and Lana Brandon appeared *pro se* and did not file motions to dismiss, but the court dismissed the complaint against them on its own motion for failure to state a claim.[3] Having dismissed Clark's federal claim with prejudice, the court declined to exercise jurisdiction over his supplemental claims and dismissed them without prejudice pursuant to 28 U.S.C. § 1367(c).

Clark appealed, then dismissed the appeal against all counseled defendants (NEHI, William and Doris Knollenberg, Virgin America Energy, Inc., MPCC Inc., Lockout Corporation, and McBay) in an agreement stipulating that each side shall pay its own attorneys' fees, but Clark maintains the appeal against all *pro se* defendants (Donald Douglas, Cheryl Douglas, Caddo Creek, Lyle Brandon and Lana Brandon), who have not filed a brief in this appeal.

A few days after this case was submitted without oral argument to the instant panel, Clark filed in the district court a "Motion to Vacate and To Remand or To Remand Issue of Newly Discovered Evidence." To confer jurisdiction on the district court to grant the motion, if it wished to in its discretion under rule 60(b), the panel issued an opinion that denied the motion to vacate and remand but granted in part the motion to remand, thus remanding for the limited purpose of giving the district court the latitude of granting the rule 60(b) motion if it wished. The panel retained jurisdiction. *Clark v. Douglas*, 229 Fed.

---

[2] *See* 18 U.S.C. § 1962(a),(b), (c).

[3] *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) ("The district court may dismiss an action on its own motion under Rule 12(b)(6) 'As long as the procedure employed is fair.'") (citation omitted).

3

App'x 314 (5th Cir. 2007) (per curiam).

In an order entered on August 30, 2007, styled "Memorandum Opinion and Order Denying Plaintiff's Motion for Relief from Judgment," the district court denied the rule 60(b) motion. On September 5, 2007, Clark appealed that order. We consider both appeals as a consolidated matter.

### III.

Apparently feeling that his repeated failure to comply with discovery orders and briefing limitations in the district court was insufficient to convey the full measure of his disrespect for that court, Clark accuses the district court of improperly denying his motion for leave to amend his complaint merely for the purpose of removing a difficult case from its docket. We disagree.

Although dismissals on the pleadings without leave to amend are disfavored, *see Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998), the disposition here was correct. We review denial of leave to amend a complaint for abuse of discretion. *Id.* Although Federal Rule of Civil Procedure 15(a) establishes a bias in favor of granting motions to amend a complaint, leave is not automatic. "In deciding whether to allow amendment, a district court 'may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Id*. (quoting *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 314 (5th Cir. 1996)).

Clark was unduly dilatory. The court's scheduling order provided that pleadings could be freely amended without motion until December 30, 2005. Clark indicates that he informed the court on November 21, 2005, that he intended to amend his complaint, but the record shows that he failed to file an amendment. Clark implies that this failure resulted from a sudden alteration by the court of its scheduling order on December 20, 2005, whereby the court refused to accept further filings until it ruled on defendants' motions to dismiss. Clark avers that he moved to lift that restriction on case filings and to amend his complaint but that the motion was inexplicably ignored.

Clark fails to mention in his brief that he did not file his motion for leave to amend his complaint until January 21, 2006, a month after the time period for free amendments had expired, three weeks after the free-amendment period had been initially scheduled to end, and nearly six months after McBay and Lockout had filed their motion under rule 12(b)(6). Ultimately, Clark availed himself of three chances to set forth the factual allegations of his complaint: the complaint, the RICO case statement (filed pursuant to counsel's FED. R. CIV. P. 11 obligation to make a reasonable investigation of the facts underlying his complaint), and his reply to the defendants' response to the RICO case statement.[4] Under these circumstances, it was not an abuse of discretion to deny Clark an additional opportunity to amend pursuant to a motion filed three weeks after the time for amendment specified by the scheduling order

---

[4] *See Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566-67 (5th Cir. 2002) (affirming refusal to amend permit further amendment after plaintiff had amended twice). *See also Price*, 138 F.3d at 608 (affirming refusal to amend after plaintiff had filed complaint, RICO case statement, and reply to motion to dismiss).

4

had ended.[5]

## IV.

We likewise affirm the rule 12(b)(6) dismissal, which we review *de novo*. *See Thompson v. Goetzmann*, 337 F.3d 489, 494 (5th Cir. 2003). Dismissal is appropriate only where it appears beyond doubt that plaintiff would not be entitled to recover under any set of facts he could prove in support of his claim. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Clark has alleged RICO violations under 18 U.S.C. § 1962(a), (b), (c), and (d), which "[r]educed to their simplest terms . . . state the following:

(a) a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;

(b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering activity; [and]

(c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity.[6]

*Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995). These sections contain common elements, one of which is that "[a] plaintiff asserting a RICO claim must allege the existence of an enterprise." *Id*. at 204. Such an enterprise may be either a formal legal entity or an association-in-fact. *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000).

Clark alleges that the defendants collectively engaged in an association-in-fact. To prove that an association-in-fact-type RICO enterprise existed, Clark must eventually bring forth "evidence of an ongoing organization, formal or informal, and . . . evidence that the various associates function as a continuing unit . . . . This formulation of an association-in-fact enterprise incorporates the notion of continuity." *Crowe*, 43 F.3d at 205. Accordingly, an "'association-in-fact enterprise 1) must have an existence separate and apart from the pattern of racketeering, 2) must be an ongoing organization and 3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure.'" *Id*. (quoting *Delta Truck & Tractor Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988)).

The district court ruled that Clark had failed to plead, outside of conclusional statements of law masquerading as factual conclusions, that the alleged enterprise had any existence separate from the pattern of racketeering or that its members functioned as a continuing unit with a coherent decision-making structure. Because it is sufficient to sustain the judgment, we look only to whether Clark has pleaded that an enterprise existed separately from the alleged pattern of racketeering.

He did not. Clark's RICO case statement declares the following:

The "enterprise" itself was to and did engage in no legitimate business. The "enter-

---

[5] Although the district court did not specifically mention that it was denying leave to amend, it is evident that the court so intended and was doing so largely for the reason that Clark had missed the deadline and had had other opportunities to correct any deficiency.

[6] Section 1962(d) prohibits only conspiracy to violate the first three sections.

prise" came into being only for the purpose of engaging in fraudulent activity, *i.e.* "Scamming" those who might wish or be convinced to engage in the oil and gas business and other speculative investments. Although [all of the defendants] presumably all engage in legitimate activitiesSSsome related to the oil businessSSapart from the "enterprise," when the "enterprise" itself did and do goes [sic] about its intended activities, it engaged only in nefarious activities, albeit all were not "racketeering activities," as defined by 18 U.S.C. § 1961(1) and albeit all were not directed toward Clark and/or the Clark Trust.

That statement, in conjunction with the factual allegations recounted above, illustrates that, aside from his conclusional allegation that the association-in-fact enterprise exists separately from the pattern of racketeering, Clark has failed to plead specific facts showing that the association exists for purposes other than merely to commit the predicate acts. The "enterprise" mentioned by § 1962 may not be the pattern of racketeering activity itself; rather, "it is an entity separate and apart from the pattern of activity in which it engages." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

Based on the pleadings, the association-in-fact between the defendants existed uniquely to defraud Clark and the trust of their investment; it did not exist separately and apart from the pattern of racketeering activity alleged and therefore did not exist in violation of § 1962. Clark's insistence in his brief that various members of the alleged enterprise participate in the oil and gas business and engage in ongoing activities such as oil well operation is misplaced; the *members* of any alleged enterprise will have an existence separate from the pattern of racketeering activity (easily demonstrated by their engaging in such activities as

brushing their teeth), but § 1962 applies solely where the enterprise as a whole exists separately and apart from the alleged pattern of racketeering activity. *See Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989).

The facts pleaded indicate that it did not. The complaint was properly dismissed, and the district court acted within its discretion by dismissing Clark's state law claims without prejudice to their being refiled in state court. *See* § 1367(c).

V.

There is no reversible error in the denial of the rule 60(b) motion. We affirm that denial, essentially for the reasons given by the district court.

The judgment and the order denying rule 60( b) relief are AFFIRMED.