# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-20576
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

May 31, 2018

Lyle W. Cayce
Clerk

ERIKA ARROYO,

      Plaintiff-Appellant,

v.

OPRONA, INC., ROSEN SWISS AG, and CHRIS F. YOXALL,

      Defendants-Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16-CV-852

ON PETITION FOR REHEARING

Before STEWART, Chief Judge, and ELROD and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

      The petition for panel rehearing is GRANTED. The panel opinion, *Arroyo v. Oprona, Inc.*, No. 17-20576 (5th Cir. 2018) is WITHDRAWN, and the following opinion is SUBSTITUTED:

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-20576

Plaintiff-Appellant Erika Arroyo ("Arroyo") appeals the district court's judgment dismissing her federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims and remanding her remaining state law claims to state court. Because Arroyo's complaint failed to sufficiently allege facts that support the standing requirement under the RICO statute for her civil RICO claims against Defendants-Appellees Oprona, Inc. ("Oprona"), Rosen Swiss AG ("Rosen Swiss"), and Chris F. Yoxall ("Yoxall"), we AFFIRM.

## I.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Oprona employed Arroyo as a finance manager in its Houston, Texas office from December 2013 to August 2015.[1] Arroyo's duties as the supervisor of the financial staff at Oprona primarily related to overseeing Oprona's accounting, payroll, and taxes. Yoxall, an Oprona vice president, supervised Arroyo.

During her employment, Arroyo became aware that Yoxall was using company funds for the payment of his personal expenses. Reviewing the accounting records, Arroyo discovered thousands of dollars had been transferred to Yoxall's personal accounts from Oprona's accounts in a way indicating that Yoxall was attempting to evade federal income taxes. Particularly, in April 2015, Yoxall requested that Arroyo prepare and sign a $96,922 check from Oprona's business account for his personal income taxes due to the IRS. Yoxall claimed that Oprona's parent company based out of Switzerland, Rosen Swiss, approved the payment that he requested. After consulting with the chief financial officer of Rosen Swiss, Oliver Kille ("Kille"), who stated that Yoxall's requested payment would not be authorized, Arroyo refused to sign and prepare the $96,922 check for Yoxall.

---

[1] We accept all well-pleaded facts as true and view the facts in the light most favorable to Arroyo. *See Bass v. Stryker Corp.*, 669 F.3d 501, 506 (5th Cir. 2012) (citing *Jebaco Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009)).

No. 17-20576

Despite Arroyo's refusal to prepare and sign the check, the check was still prepared and processed by another staff member for Yoxall. At an annual financial meeting held at Rosen Swiss's headquarters in Stans, Switzerland the same month, Arroyo voiced her concerns to Kille regarding Yoxall's use of company funds to pay his personal expenses. To support her allegations, after returning to Houston, Arroyo sent financial records to Rosen Swiss's headquarters that detailed Yoxall's improper use of Oprona's funds.

Thereafter, Arroyo began to gradually lose her duties at Oprona. In May 2015, Arroyo was moved out of her office and had some of her responsibilities passed over to a newly hired employee. In July 2015, Yoxall removed more of Arroyo's duties and supervisory authority. Eventually, Yoxall asked Arroyo to voluntarily resign from her position. On August 5, 2015, after Arroyo refused to resign, Oprona terminated Arroyo's employment.

In March 2016, Arroyo filed this lawsuit against Oprona, Rosen Swiss, and Yoxall in Texas state court alleging Texas state law claims and claims for violations of the federal civil RICO statute. Particularly, Arroyo alleged that Oprona, Yoxall, and Rosen Swiss engaged in a RICO conspiracy involving the RICO predicate acts of mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, witness tampering, 18 U.S.C. § 1512(b), and retaliation against a witness, 18 U.S.C. § 1513(e), that directly related to her termination of employment at Oprona.

The suit was subsequently removed to federal court based on federal question jurisdiction. On November 1, 2016, the district court granted Arroyo's motion for leave to amend her complaint, where she continued to assert her federal civil RICO and state law claims. Oprona, Yoxall, and Rosen Swiss filed motions to dismiss Arroyo's amended complaint. After adopting the magistrate judge's report and recommendation, the district court dismissed Arroyo's

complaint against Rosen Swiss without prejudice on grounds of insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). Additionally, the district court dismissed the federal civil RICO claims against Yoxall and Oprona based on Arroyo's failure to state a plausible claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). Arroyo timely appealed.

## II.　DISCUSSION

### a.　RICO Claims

We review a district court's grant of a Rule 12(b)(6) motion to dismiss de novo. *Bass*, 669 F.3d at 506. "Dismissal is appropriate when the plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face or has failed to raise [her] right to relief above the speculative level." *Id.* "[W]e may affirm the district court on any grounds raised below and supported by the record." *Welborn v. Bank of New York Mellon Corp.*, 557 F. App'x 383, 386 (5th Cir. 2014) (per curiam) (unpublished) (citing *Raj v. Louisiana State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013)). As a preliminary matter, "[a] plaintiff must establish standing to bring a civil RICO claim" under the RICO statute. *Jackson v. Nat'l Ass'n for Advancement of Colored People*, 546 F. App'x 438, 442 (5th Cir. 2013) (per curiam) (unpublished) (citing *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 606 (5th Cir. 1998)). "'Any person injured in his business or property by reason of a violation of section 1962' may sue pursuant to the civil cause of action created by RICO." *Id.* (quoting 18 U.S.C. § 1964).

"Whistle blowers do not have standing to sue under RICO for the injury caused by the loss of their job." *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1215 (5th Cir. 1988). However, a plaintiff has standing under the RICO statute if she can show she "has been injured in [her] business or property by the conduct constituting the violation"—that is, by the commission of the predicate acts. *Id.* (quoting *Sedima v. Imrex, Co.*, 473 U.S. 479, 497 (1985)). Here, Arroyo

claims that the commission of two predicate acts resulted in her injuries. However, Arroyo did not sufficiently plead violations of those two predicate acts: (1) retaliation against a witness under 18 U.S.C. § 1513(e); and (2) witness tampering under 18 U.S.C. § 1512(b). We agree with the district court that Arroyo's pleadings are conclusory and insufficient to survive a 12(b)(6) motion to dismiss.

### b. Denial of Leave to Amend

"The district court is entrusted with the discretion to grant or deny a motion to amend and may consider a variety of factors including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., and futility of the amendment." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quotation marks omitted). Arroyo failed to explain in either the district court or in this appeal "what facts [she] would have added or how [she] could have overcome the deficiencies found" in regards to her lack of standing under the RICO statute to assert her claims. *See Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (internal quotation marks and citation omitted). Arroyo "gives no indication that [she] did not plead [her] best case in [her] complaint." *Id.* Although Arroyo's objections to the Report and Recommendation included six additional proposed amendments, we agree with the district court that these amendments would have been futile because the additions sought were still conclusory. Arroyo had already been previously granted leave to amend her complaint and the amendments would not have cured the deficiencies. Thus, we conclude that Arroyo's request for leave to amend her complaint was properly denied.

In light of the foregoing, the judgment of the district court is AFFIRMED.