**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UTHE TECHNOLOGY CORPORATION, *Plaintiff-Appellant*, v. AETRIUM, INC.; HARRY ALLEN, *Defendants-Appellees*. | No. 13-16917 D.C. No. 3:95-cv-02377-WHA OPINION |

Appeal from the United States District Court
for the Northern District of California
William Alsup, District Judge, Presiding

Argued and Submitted
November 19, 2015—San Francisco, California

Filed December 11, 2015

Before: FERDINAND F. FERNANDEZ and MILAN D.
SMITH, JR., Circuit Judges, and SHIRA A.
SCHEINDLIN,* Senior District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

* The Honorable Shira Ann Scheindlin, Senior District Judge for the U.S. District Court for the Southern District of New York, sitting by designation.

## SUMMARY[**]

### RICO

Reversing the district court's summary judgment, the panel held that the plaintiff was entitled to seek treble damages under the Racketeer Influenced and Corrupt Organizations Act against the remaining defendants following an arbitration proceeding and award against the defendants in Singapore.

The panel held that an additional award of damages under RICO would not violate the "one satisfaction" rule, an equitable principle designed to prevent double recovery of damages arising from the same injury, because the arbitral award did not constitute full satisfaction of the plaintiff's pre-existing RICO claim. The panel remanded the case for further proceedings.

### COUNSEL

Myron Moskovitz (argued), Piedmont, California, for Plaintiff-Appellant.

Archana Nath (argued) and David B. Potter, Oppenheimer Wolf & Donnelly LLP, Minneapolis, Minnesota; Ann E. Johnston, Coblentz, Patch, Duffy & Bass LLP, San Francisco, California, for Defendants-Appellees.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

M. SMITH, Circuit Judge:

Approximately two decades ago, Plaintiff UTHE Technology Corporation (Uthe), a manufacturer and distributor of semiconductor products, brought suit against Harry Allen and Aetrium Incorporated (collectively, the Defendants) and a number of individuals in Singapore (the Foreign Defendants), alleging a conspiracy to unlawfully take over one of Uthe's overseas subsidiaries. In its original federal court action, Uthe brought claims for, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68, against both the Defendants and the Foreign Defendants. The action against the Foreign Defendants was dismissed on the basis of *forum non conviens* because an arbitration clause in a relevant agreement required that Uthe arbitrate its claims against the Foreign Defendants in a proceeding governed by Singapore law (the Singapore arbitration). Uthe's suit against the Defendants was stayed by the district court pending the resolution of the Singapore arbitration against the Foreign Defendants.

The Singapore arbitration, which lasted nearly two decades, resulted in an award of over 12 million Singapore dollars (approximately $9 million USD) against the Foreign Defendants to compensate Uthe for actual losses stemming from the conspiracy. That award has now been paid in full. Following the conclusion of the Singapore arbitration, Uthe reinstated the present action against the Defendants, requesting relief under RICO's treble damages provision. The district court granted summary judgment in favor of the Defendants, holding that an award of additional damages

under RICO would violate the "one satisfaction" rule (one satisfaction rule), an equitable principle designed to prevent double recovery of damages arising from the same injury.

We reverse and remand. Because the arbitral award did not constitute full satisfaction of Uthe's pre-existing RICO claim, we hold that Uthe is entitled to seek treble damages under RICO against the Defendants.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Conspiracy

Uthe alleges that the Defendants, in conjunction with the Foreign Defendants working inside its foreign subsidiary Uthe Technology Singapore Private Limited (Uthe Singapore), engaged in a campaign to poach customers and divert business from Uthe Singapore to a secret corporation they had formed for this purpose. Uthe Singapore distributed semi-conductor equipment manufactured by Uthe and other suppliers throughout Asia. During this time, Uthe Singapore was a party to a long-term distribution agreement to sell Aetrium Incorporated's (Aetrium) products to customers in Asia. Aetrium was one of Uthe Singapore's largest suppliers, and Harry Allen served as Aetrium's officer in charge of sales in Asia.

---

[1] The Defendants also argue that summary judgment should be affirmed on the alternate ground that the alleged conspiracy failed to show the requisite "continuity" under RICO. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). Because the district court declined to reach this issue when it granted summary judgment based on the one satisfaction rule alone, we remand to the district court to decide the "continuity" issue in the first instance. *See New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1092 n.1 (9th Cir. 2011).

Around July 1992, the Foreign Defendants solicited the assistance of the Defendants in the conspiracy. During a conference call, the Defendants allegedly agreed that they would withhold payments from Uthe Singapore arising from its distribution agreement with Aetrium, encourage customers to transact business with Aetrium directly rather than through Uthe Singapore, and covertly amend the terms of the distribution agreement, so that Aetrium could terminate the contract on short notice and transfer its business from Uthe Singapore to the secret corporation. Uthe contends that the Defendants engaged in predicate acts of mail and wire fraud during the months of July through September to effectuate their scheme.

In October 1992, after being severely damaged by the efforts of the conspiracy, Uthe agreed in a stock purchase agreement (the Purchase Agreement) to sell its shares in Uthe Singapore to the Foreign Defendants at a significantly depressed price. The Purchase Agreement contained an arbitration clause, which provided for binding arbitration of any disputes arising from the agreement. It also contained a choice of law clause that selected Singapore law as the governing law for any arbitration proceedings.

## B.  The Original District Court Proceedings

In July 1993, Uthe filed suit against the Defendants and the Foreign Defendants in California state court, seeking damages arising from the conspiracy. After the case was removed to federal court in the Northern District of California, Uthe filed an amended complaint alleging RICO violations, among other causes of action.

The Foreign Defendants then moved to compel arbitration of Uthe's claims against them pursuant to the arbitration clause contained in the Purchase Agreement. Unlike the Foreign Defendants, the Defendants were not signatories to the Purchase Agreement or otherwise bound to arbitrate Uthe's claims against them.

Over Uthe's vigorous objections, the district court dismissed the Foreign Defendants from the case on the basis of *forum non conviens* and stayed its proceedings with respect to the Defendants pending the outcome of the Singapore arbitration, noting that "the arbitration may narrow or limit the issues raised by the claims alleged against Aetrium and Allen."

In so ruling, the district court acknowledged that the Singapore arbitration could conclusively resolve Plaintiff's claims against the Foreign Defendants. It concluded that Singapore would serve as an "adequate alternative forum in which to adjudicate Plaintiff's claims against [the Foreign Defendants]," noting that "Plaintiff's federal securities claims are trumped by the choice of law provision specifying the application of Singapore law." In contrast, Uthe's right to eventually pursue its own claims against the Defendants in federal court remained unaffected by the district court's order.

## C.  The Singapore Arbitration

The Singapore arbitration spanned almost two decades. The arbitration commenced in August 1994, but the arbitral proceedings were interrupted several times by legal challenges brought by the parties in Singapore courts, and by the appointment of a replacement arbitrator.

On June 30, 2005, the arbitrator found that the Foreign Defendants were liable to Uthe. The arbitrator also ordered:

> [T]here shall be no further or other actions or proceedings . . . by [Uthe] against [the Foreign Defendants] . . . without prejudice to [Uthe's] rights in the U.S. action against [the Foreign Defendants] and the other defendants in the U.S. Action . . . .[2]

Subsequently, on March 23, 2012, the arbitrator issued a damages award against the Foreign Defendants and in favor of Uthe amounting to 12,286,350 Singapore dollars (the equivalent of approximately $9,180,771 USD) with yearly interest of 1.5%. The arbitrator determined that the damages figure reflected the difference between the depressed sale price of Uthe Singapore's stock and the projected value of the stock absent the effects of the conspiracy. The arbitrator also found that Uthe had suffered losses of approximately 500,000 Singapore dollars as a result of diverted business opportunities. However, he chose to award Uthe the greater amount of 12,286,350 Singapore dollars in damages, reasoning that an award for both the depressed stock price and diverted business opportunities would be duplicative. The

---

[2] Notwithstanding this statement, the existence of a final and binding arbitral judgment against the Foreign Defendants appears to preclude Uthe from now pursuing its original federal claims against the Foreign Defendants. The district court found that the Singapore arbitration would serve as an adequate forum for the resolution of such claims when it dismissed the Foreign Defendants from the action. Moreover, as the arbitrator noted, "it appears that the proper forum is and always was Singapore," given the nature of the mandatory and binding arbitration clause between Uthe and the Foreign Defendants.

Foreign Defendants have since paid Uthe the full amount of the arbitration award.

## D.  The Current District Court Proceedings

Upon the conclusion of the Singapore arbitration, Uthe filed a motion in May 2012 to reopen its original suit against the Defendants in federal district court and to lift the stay. The district court granted Uthe's motion and permitted it to file an amended complaint. Following the conclusion of discovery, the Defendants filed a motion for summary judgment. On September 9, 2013, the district court granted the Defendants' motion for summary judgment, holding that the full satisfaction of the arbitration damages award extinguished Uthe's claim against the Defendants for treble damages under RICO. This timely appeal followed.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's decision to grant summary judgment de novo by "viewing the evidence in the light most favorable to the nonmoving party to determine whether any genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law." *Trs. of Const. Indus. & Laborers Health & Welfare Trust v. Hartford Fire Ins. Co*., 578 F.3d 1126, 1129 (9th Cir. 2009). Summary judgment is appropriate when the facts and pleadings "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Rosenbaum v. Washoe Cty*., 663 F.3d 1071, 1075 (9th Cir. 2011) (citing *Celotex Corp v. Caltrett*, 477 U.S. 317, 322 (1986)).

## DISCUSSION

RICO provides the statutory remedy of treble damages for any individual "injured in his business or property by reason of a violation" of the statute. 18 U.S.C. § 1964(c). The statutory remedy of treble damages reflects Congress's intent to remedy the injuries caused by organized crime as well as to "bring to bear the pressure of 'private attorneys general' on a serious national problem." *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 151 (1987). As the Supreme Court has held, "RICO was an aggressive initiative to supplement old remedies and develop new methods for fighting crime." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985). RICO's provisions must therefore be construed "liberally" in keeping with the broad remedial purposes of the statute. *Id.* Notwithstanding RICO's provision of treble damages, the one satisfaction rule also applies.[3] *See Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1389–90 (9th Cir. 1987). The one satisfaction rule reflects the equitable principle that a plaintiff who has received full satisfaction of its claims from one tortfeasor generally cannot

---

[3] The district court and the parties refer to California state cases concerning the application of the one satisfaction rule. In contrast, we rely on federal authorities for the same legal principle. Although this distinction is not dispositive, it stands to reason that the measure of damages corresponding to a federal cause of action such as RICO should be governed by the federal law of damages rather than by state law. *See Singer v. Olympia Brewing Co.*, 878 F.2d 596, 599–600 (2d Cir. 1989) (holding that "federal law should determine whether a defendant in a federal securities action is entitled to a credit . . . for the settlement by another party," particularly as the question of damages is a substantive rather than procedural matter). *See also Seymour*, 809 F.2d at 1389 n.5 ("[I]t is unclear whether federal or state law applies to the settlement offset issue . . . [but] state law appears to be consistent with federal law on this issue and we consider California precedent persuasive authority.").

sue to recover additional damages corresponding to the same injury from the remaining tortfeasors:

> It is settled that . . . a plaintiff who has recovered any item of damage from one coconspirator may not again recover the same item from another conspirator; the law, that is, does not permit a plaintiff to recover double payment.

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 348 (1971). A corollary principle of the one satisfaction rule is that "payment made by a joint tortfeasor diminishes the claim against the remaining tortfeasors." *Seymour*, 809 F.2d at 1389.

The key question posed in this appeal is how the one satisfaction rule interacts with RICO's treble damages provision. Specifically, to what extent does the one satisfaction rule operate to diminish the amount of damages claimed against the Defendants? Depending upon the order in which the two rules are applied, the one satisfaction rule could either offset part of Uthe's treble RICO damages, or it could fully extinguish Uthe's claim to those damages.

The district court held that the one satisfaction rule extinguished Uthe's claim to treble RICO damages, reasoning that Uthe had already received full compensation for its damages from the Singapore arbitration. The $9 million arbitral award roughly corresponded to Uthe's losses caused by the conspiracy. The district court further reasoned that, given the full satisfaction of the arbitral award, "there are no items remaining to be compensated by reason of any RICO violation, and zero multiplied by three is still zero."

However, the full measure of Uthe's claims against the Defendants was not satisfied by the Singapore arbitration award, such that no additional recovery is permissible under RICO. The Singapore arbitration was limited in scope to those claims against the Foreign Defendants arising under Singapore law, and could not fully resolve Uthe's legal claims against the Defendants, which were pending in the federal court action. Specifically, Singapore law could not provide for the resolution of Plaintiff's RICO claims, which were asserted in the original federal lawsuit. As Uthe's legal expert noted, "the concept of treble damages is not recognized under Singapore law." Accordingly, as more fully explained below, the one satisfaction rule does not operate to extinguish the Plaintiff's claim to RICO damages.

In order for a court to find complete satisfaction under the one satisfaction rule, there must be such an identity between the injuries alleged and the remedies available that any additional recovery would unjustly enrich the plaintiff. The Restatement (Third) of Torts § 25 cmt. b (2000) is instructive on this point:

> In some instances, the injuries for which the plaintiff brings a second suit may not be entirely congruent with the injuries for which the plaintiff recovered in the first suit. Similarly, in some instances, the remedies available for the claims made by the plaintiff in a second suit may be broader than the remedies available for the claims asserted in the first suit. Satisfaction of a claim cannot occur unless the injuries sued upon are identical and the remedies available for the claims are the same.

Several courts have adopted this principle by applying the one satisfaction rule to offset the amount of a judgment only when two defendants are responsible for "common damages" stemming from the same injury. *See, e.g.*, *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 737 (4th Cir. 2000) ("The essential requirement for the 'one satisfaction rule' is that the amounts recovered by settlement and the judgment must represent common damages arising from a single, indivisible harm."); *City of San Jose v. Price Waterhouse*, No. 91-16489, 1993 WL 83495, at *1 (9th Cir. Mar. 23, 1993) ("An offset is available where the settlement and the jury verdict represent common damages."); *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 599–600 (2d Cir. 1989) (same).

In this case, the remedies available to Uthe in the Singapore arbitration diverge significantly from the remedies available to it under RICO in the present action. *See Pennsylvania v. Cianfrani*, 600 F. Supp. 1364, 1368 (E.D. Pa. 1985) (prior payments only served to partially offset RICO damages due to "the possibility that federal law would provide a remedy greater than was available under state law"). Although future cases may address whether full satisfaction can still be achieved if the remedies or injuries are substantially equivalent, rather than "identical," we need not resolve those questions to decide the present case. The disparity between the remedy of treble RICO damages and actual damages is simply too great. No remedy equivalent to RICO treble damages was available to Uthe under Singapore law, so it was not possible for Uthe to obtain full satisfaction of its RICO claims in  the Singapore arbitration.

Moreover, the animating purpose of the one satisfaction rule is to prevent double recovery and unjust enrichment. *See Seymour*, 809 F.2d at 1389–90 ("The foremost of these

[policy goals] is assuring the tort victim one complete satisfaction of [its] claim, neither more nor less."). The maximum amount that Uthe could have been awarded in a single lawsuit arising from the same injury was treble the amount of actual damages under RICO. Uthe would have been entitled to pursue this treble damages claim had the federal court action not been stayed pending the Singapore arbitration. Uthe vigorously contested the stay of the district court action, particularly as it would postpone the pursuit of its RICO claim against the Defendants, which it had not agreed to arbitrate.

Because the Singapore-based arbitral tribunal had no jurisdiction over the Defendants, who were not parties to the Purchase Agreement or to its arbitration clause, it could not circumscribe Uthe's rights to pursue the full measure of its legal remedies against the Defendants in federal court. Accordingly, the arbitration award states that it is made "without prejudice to [Uthe's] rights in the U.S. Action." Thus, neither the arbitration award nor the one satisfaction rule forecloses Uthe's ability to pursue a treble damage award against the Defendants; it does not amount to double recovery, nor does it permit Uthe to obtain any damages beyond which it could have otherwise been entitled in the federal district court lawsuit.

In reaching this conclusion, we also acknowledge the persuasive reasoning of our colleague, A. Wallace Tashima, then a district judge, in *In re National Mortgage*. *See In re Nat'l Mortg. Equity Corp. Mortg. Pool*, 636 F. Supp. 1138 (C.D. Cal. 1986). As in this appeal, the court in *In re National Mortgage* examined the question of "[w]hat constitutes 'full satisfaction' of a treble damages claim." *Id.* at 1151. There, a plaintiff claiming treble RICO damages had received

settlement payments constituting the full measure of actual damages from one of the defendants. *Id.* The district court held that "the 'full satisfaction' to which treble damages claimants are entitled is 'three times the proven actual damages' – any award less than that amount constitutes an incomplete recovery." *Id*. at 1152.

The Defendants attempt to limit the reasoning of *In re National Mortgage* to those situations where plaintiffs received partial satisfaction of an adjudicated damage award or satisfaction of a non-adjudicated damage award (such as a settlement, release, or covenant not to sue). However, whether such payments result from a settlement or a prior judgment, they constitute partial credits toward the full measure of damages for which a defendant may be liable under RICO, and would not operate to unjustly permit double recovery.

## CONCLUSION

We hold that Uthe is not barred by the one satisfaction rule from pursuing treble damages under RICO against the Defendants, provided there is an offset for the sums paid to Uthe by the Foreign Defendants as a result of the arbitral award.

Accordingly, we **REVERSE** the district court's grant of summary judgment and **REMAND** for further proceedings.