# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 4, 2021

Lyle W. Cayce
Clerk

No. 20-50718

HCB Financial Corporation,

*Plaintiff—Appellant*,

*versus*

Lee K. McPherson, *in her individual capacity and in her capacity as trustee of the trust* U/W/O Babette L. Wiener dated 10/30/1984, *also known as* Lee Kennedy, *also known as* Lee F. Kennedy, *also known as* Lee K. Freyer; Brenda L. Adkinson; Harry Rauch Freyer, *in his individual capacity and in his capacity as trustee of the trust* U/W/O Babette L. Wiener dated 10/30/1984; Emmanuel Kniahynycky; Neil McPherson; Samuel Reynolds; Anita L. Williams; Palms Destin Holdings, L.L.C.; Michael William Mead; Mead Law; Title, P.L.L.C.; Jeffrey L. Hall; et al,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:18-CV-1120

Before Clement, Haynes, and Wilson, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:

Several years ago, in a separate lawsuit, HCB Financial Corp. won a $2 million judgment against Lee McPherson for a defaulted loan. After years

No. 20-50718

of unsuccessful attempts to collect, HCB filed this lawsuit against McPherson and the other defendants (collectively, "McPherson"), seeking treble damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964(c). One month after HCB filed suit, McPherson registered the $2 million judgment plus interest with the first court. Because McPherson satisfied the underlying judgment, the district court here found that HCB had suffered no injury—an essential element of its RICO claim. As a result, the court dismissed the suit with prejudice.

This presents a question of first impression for our circuit: Can the possibility that a plaintiff may recover treble damages sustain a RICO action after the underlying debt is satisfied? The only other circuit to squarely address this question has said it cannot. We now join our sister circuit and affirm the district court's dismissal.

I.

The unpaid judgment at issue comes from an earlier lawsuit that HCB Financial brought against McPherson in the Southern District of Mississippi. The district court there entered a $2,019,495.82 judgment in favor of HCB and against McPherson. *HCB Fin. Corp. v. Kennedy*, No. 1:10-cv-559-HSO, 2013 WL 12090332 (S.D. Miss. Mar. 14, 2013), *as amended*, 2013 WL 12090333 (S.D. Miss. July 11, 2013). A panel of this court affirmed. *HCB Fin. Corp. v. Kennedy*, 570 F. App'x 396 (5th Cir. 2014) (per curiam).[1]

For years after the Mississippi court entered judgment, HCB sought in vain to collect through post-judgment discovery, various lawsuits, intervention in a California action McPherson had filed, and various charging

---

[1] Lee McPherson was known as Lee Kennedy in that Southern District of Mississippi action. We follow the district court and refer to her here as Lee McPherson in accordance with the case caption and her filings.

No. 20-50718

orders. HCB then filed this RICO action in the Western District of Texas on December 24, 2018. HCB's complaint alleged that McPherson and her "family members, accountants, engineers, real estate brokers, bankers, and business partners" had engaged in a racketeering enterprise "to defraud banks, title insurance companies, courts, and [her] legitimate creditors, including HCB."

Motivated to action by HCB's RICO lawsuit, McPherson returned to the Southern District of Mississippi on January 25, 2019, to deposit the funds and satisfy her judgment. The Mississippi court ordered McPherson to deposit $2,036,293.60 with the court, representing the judgment plus post-judgment interest. The court initially denied McPherson's motion for an order declaring the judgment satisfied, pending resolution of any post-judgment attorneys' fees. That matter has since been resolved.[2]

Returning to this case in the Western District of Texas, HCB then filed a 345-page amended complaint. In addition to its RICO allegations, HCB also brought more than a dozen state-law claims and one count under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. HCB seeks RICO treble damages pursuant to 18 U.S.C. § 1964(c), monetary damages, and injunctive and declaratory relief.[3]

McPherson and the other defendants filed four motions to dismiss. Most importantly, two groups of defendants argued that HCB failed to plead an injury. They also argued that the RICO claims were barred by the statute of limitations, that HCB failed to plead essential elements of a RICO

---

[2] On December 14, 2020, the Mississippi court awarded HCB Financial $890,023.34 in post-judgment attorneys' fees and costs. Mem. Op. and Order, *HCB Fin. Corp. v. Kennedy*, No. 1:10-cv-559-HSO (S.D. Miss. Dec. 14, 2020).

[3] HCB sought attorneys' fees and costs in its amended complaint but did not appeal that issue.

enterprise, and that the court should decline supplemental jurisdiction over the state-law claims. Two other groups of defendants sought dismissal for lack of personal jurisdiction under Rule 12(b)(2), an issue that the district court did not reach.

The magistrate judge ("MJ") issued a detailed Report and Recommendation finding that HCB lacked statutory RICO standing and recommending dismissal without prejudice. HCB objected broadly to the Report and Recommendation. HCB argued that the issue should be analyzed as a question of mootness and then rejected the idea that McPherson's deposit of the Mississippi judgment mooted a RICO claim.[4] McPherson objected narrowly, arguing for dismissal *with* prejudice. The district court overruled HCB's objections, adopted the Report and Recommendation, and agreed with McPherson that amendment would be futile. The court dismissed HCB's RICO claims with prejudice and declined to exercise supplemental jurisdiction over the state-law claims. HCB appealed.

## II.

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ." 18 U.S.C. § 1962(c). The statute "provides a private civil action to recover treble damages for injury 'by reason of a violation of' its substantive provisions." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481 (1985) (quoting 18 U.S.C. § 1964(c)). "Broadly stated, a civil RICO claimant must prove (1) a violation of the substantive RICO statute, 18 U.S.C. § 1962, and (2) an injury to the plaintiff's 'business or property by reason of a

---

[4] HCB has abandoned its mootness argument on appeal.

violation of section 1962.'" *Alcorn Cnty. v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1167 (5th Cir. 1984) (quoting 18 U.S.C. § 1964(c)), *abrogated on other grounds by United States v. Cooper*, 135 F.3d 960 (5th Cir. 1998).

Courts sometimes refer to these requirements as RICO standing or statutory standing. *See In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 521 (5th Cir. 1995) ("The standing provision of civil RICO provides that '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor . . . and shall recover threefold the damages he sustains.'" (quoting 18 U.S.C. § 1964(c))). Accordingly, courts insist that damages or injury "as a result of the RICO violation" is "a necessity for standing under RICO." *Id.* at 522. Or, as the Supreme Court has put it, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496.

Although statutory standing involves an inquiry into alleged injury, it is not synonymous with Article III standing. Instead, a motion to dismiss for lack of statutory standing is analyzed under Rule 12(b)(6), not Rule 12(b)(1). *Cox, Cox, Filo, Camel & Wilson, L.L.C. v. Sasol N. Am., Inc.*, 544 F. App'x 455, 457 n.8 (5th Cir. 2013) (mem.); *Arroyo v. Oprona, Inc.*, 736 F. App'x 427, 429 (5th Cir. 2018) (per curiam); *see DeMauro v. DeMauro*, 115 F.3d 94, 96 (1st Cir. 1997); *In re Schering–Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *see also Canyon Cnty. v. Syngenta Seeds, Inc.*, 519 F.3d 969, 974 n.7 (9th Cir. 2008) ("[T]he question of statutory standing [under RICO] is to be resolved under Rule 12(b)(6), once Article III standing has been established." (citation omitted)).

Recognizing this, the district court correctly analyzed the motions to dismiss under Rule 12(b)(6). We review that dismissal de novo. *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 783 (5th Cir. 2020). We

review the district court's denial of leave to amend the complaint for abuse of discretion. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 605 (5th Cir. 1998) (per curiam).

## III.

The district court considered two arguments that HCB proffered to establish injury: "lost debt" damages and "lost investment opportunity" damages. We begin with the "lost debt" issue.

## A.

"Lost debt" damages are "damages in the form of an owed, but as-yet-uncollected, amount." *D'Addario v. D'Addario*, 901 F.3d 80, 93 (2d Cir. 2018). On that understanding, the district court dismissed HCB's RICO claims because, once McPherson satisfied the $2 million judgment, HCB's debt was no longer "lost." This is a matter of first impression for our circuit, but the district court was not without guidance. The Second Circuit has addressed this precise question. So, we begin with a review of three instructive decisions from our sister circuit. We then address HCB's counterproposal. Finally, we explain why we join the Second Circuit's approach.

## 1.

The first decision is *Bankers Trust Co. v. Rhoades*, in which a creditor brought a "lost debt" RICO claim against a debtor after the debtor's "fraudulent transfer" of a $3 million asset caused the plaintiff creditor to "accept[] a bankruptcy reorganization plan that would have allowed [the plaintiff] to recover only 17.5% of its allowed claim." 859 F.2d 1096, 1098, 1105 (2d Cir. 1988). The Second Circuit held that "damages in this category are unrecoverable, at least at this time, because their accrual is speculative and their amount and nature unprovable." *Id.* at 1106 (quotations and

citations omitted). Critically, the court said that if the plaintiff recovered any of its damages in a parallel bankruptcy proceeding, it "would benefit . . . and its injury would decrease." *Id.* Thus, the court said that "a claim will accrue" only "[w]hen the damages . . . become definite." *Id.* Until then, the court dismissed "any claim for relief based on the lost-debt injury." *Id.*

The Second Circuit built on that foundation in *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158 (2d Cir. 1993). There, after the defendants fell behind on insurance premiums and then allegedly concealed or misrepresented their assets in bankruptcy proceedings, their long-time insurance broker filed two separate state court actions. *Id.* at 1161–62. It then filed the federal RICO lawsuit, "alleging that the defendants engaged in a civil RICO conspiracy . . . to prevent Stochastic from collecting the amounts it was owed." *Id.* at 1163. But after it filed the RICO suit, the broker recovered the full judgment from the first state lawsuit and was "likely" to recover the full judgment in the second case. *Id.* at 1165–66.

In an argument nearly identical to HCB's here, the plaintiff broker argued that its RICO damages were appropriately calculated by trebling the amount that the defendants owed the plaintiff at the commencement of the federal RICO lawsuit. *Id.* at 1164. The Second Circuit rejected that argument. *Id.* at 1165. To the contrary, relying on *Bankers Trust*, the court announced a rule that "a debt is 'lost' and thereby becomes a basis for a RICO trebling only if the debt (1) cannot be collected (2) 'by reason of' a RICO violation." *Id.* at 1165 (citing 18 U.S.C. § 1964(c)). Applying that rule, the court rejected the "lost debt" argument because of the plaintiff's recovery of the debt after it filed the RICO suit. *Id.* at 1165.

The court also addressed another argument that HCB makes here; namely, "that permitting a defendant to avoid treble damages by paying compensatory damages prior to entry of the judgment vitiates the remedial

nature of RICO." *Id.* at 1166. The court rejected that argument, though, as inconsistent with the nature of a "lost debt" claim. *Id.* The court reiterated that a "lost debt" RICO claim like this "does not accrue until it is established that collection of the claim or judgment has been successfully frustrated. In other words, to the extent of a successful collection, the RICO claim is abated *pro tanto*, prior to any application of trebling." *Id.* And the court said so in the precise context presented here, in which the plaintiff recovered the judgment after filing its RICO suit.

The last case in the line is *Commercial Union Assurance Co. v. Milken*, 17 F.3d 608 (2d Cir. 1994). In *Milken*, the plaintiffs were victims of a "notorious takeover-stock speculator" who sold them a $10.5 million partnership interest in a risk-arbitrage venture. *Id.* at 610. After the speculator pleaded guilty to insider trading, the plaintiffs filed their federal lawsuit to recover their investment, seeking RICO treble damages. *Id.* A conservator was appointed, who oversaw payments to the plaintiffs that eventually totaled over $12 million, which amounted to "a yield of 10.2 percent" on their capital investment. *Id.* at 611. The plaintiffs also retained their partnership interests. *Id.* As here, the plaintiffs filed an amended complaint *after* recovering their losses plus interest. *Id.*

Noting that the plaintiffs' RICO claim was "strikingly similar" to that in *Stochastic*, the Second Circuit rejected any "entitle[ment] to a trebling of the full amount of their invested capital ($10.5 million)" because "they ha[d] recouped not only their initial investment, but also [a] 10.2 percent return on their capital[.]" *Id.* at 612. As such, the court found that the plaintiffs' "claim lacks that most fundamental of legal elements necessary to support a viable cause of action—any demonstrable damages." *Id.*

As in *Stochastic*, the *Milken* court analyzed and rejected some of the same arguments that HCB makes here. The court made clear that RICO

No. 20-50718

treble damages are not punitive, but rather compensatory for "injury to plaintiffs' business or property." *Id.* at 609. Rejecting the suggestion that only treble damages could fully compensate the plaintiffs, the court reaffirmed that "damages as compensation under RICO § 1964(c) for injury to property must, under the familiar rule of law, place appellants in the same position they would have been in but for the illegal conduct." *Id.* at 612. After the plaintiffs recovered their investment plus interest, they had "already been placed by defendants in that position." *Id.*

2.

HCB insists that the Second Circuit's decisions employ a discredited approach. Instead, HCB urges us to follow *PacifiCare Health Systems, Inc. v. Book*, 538 U.S. 401 (2003), *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987), and *Uthe Technology Corp. v. Aetrium*, 808 F.3d 755 (9th Cir. 2015). But we are unconvinced. As we discuss, none of HCB's authority presents the specific "lost debt" issue we confront in this case. Nor do we agree with HCB that the Supreme Court has implicitly rejected the Second Circuit's analysis.

Start with *PacifiCare*, 538 U.S. at 401. As HCB would have it, *PacifiCare* is the Supreme Court's endorsement of *Liquid Air* and rejection of *Milken*. But the issue in *PacifiCare* was whether a party "can be compelled to arbitrate claims under [RICO], notwithstanding the fact that the parties' arbitration agreements may be construed to limit the arbitrator's authority to award damages under that statute." 538 U.S. at 402. Out of concern that the arbitration provisions might "preclude an arbitrator from awarding treble damages under RICO," the district court denied the request to compel arbitration. *Id.* at 405. The Supreme Court reversed and compelled arbitration, noting that the effect of the provisions was "unusually abstract,"

since the arbitrator had not been given the opportunity to consider them. *Id.* at 407. In short, the case had little, if anything, to do with this dispute.

Perhaps to get around this, HCB does not rely on the holding in *PacifiCare*. Rather, HCB highlights language confirming that the Supreme Court has "repeatedly acknowledged that the treble-damages provision contained in RICO itself is remedial in nature." *Id.* at 406. HCB insists that the Second Circuit's opinions are inconsistent with that approach, but they are not to the contrary. Given the refrain in *Bankers Trust*, 859 F.2d at 1106, *Milken*, 17 F.3d at 612, and *Stochastic*, 995 F.2d at 1166, that RICO damages serve a compensatory function, it is difficult to credit HCB's reading of *PacifiCare*. As McPherson points out in response, "the Supreme Court's view that treble damages under both RICO and the Clayton Act play a remedial role was already established when the Second Circuit decided both *Stochastic* and *Milken* (and when the Supreme Court denied certiorari in the former)." *See Stochastic*, 995 F.2d at 1158, *cert. denied*, 114 S. Ct. 385 (1993). HCB's reliance on *PacifiCare* is misplaced.[5]

Similarly, as the Second Circuit said in both *Stochastic* and *Milken*, the Seventh Circuit's opinion in *Liquid Air* is also inapposite. *See Liquid Air*, 834 F.2d at 1297. Critically, the defendants there returned the fraudulently

---

[5] This is not to say that treble damages are exclusively remedial. We have noted that "nothing in *PacifiCare* contravenes the [Supreme] Court's earlier holdings that treble-damages provisions serve both compensatory and punitive functions." *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 413 (5th Cir. 2015) (citing *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 240 (1987); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 910 (3d Cir. 1991) ("[T]here is convincing authority that Congress authorized civil RICO's powerful treble damages provision to serve a punitive purpose.")); *see also Malvino v. Delluniversita*, 840 F.3d 223, 230–31 (5th Cir. 2016) ("*Gil Ramirez* notes . . . that RICO serves both compensatory and punitive purposes. As between the two, it acknowledges the Supreme Court's view that RICO's treble damages provision is primarily remedial." (citations omitted)).

converted property only "*after* the entry of a RICO judgment that trebled the damages resulting from that conversion." *Stochastic*, 995 F.2d at 1166 (citing *Liquid Air*, 834 F.2d at 1310). That timeline makes all the difference. Like the defendants in *Stochastic* and *Milken*, McPherson satisfied the underlying judgment shortly after HCB filed its RICO complaint. (Indeed, McPherson did so *before* HCB filed its operative amended complaint.) But *Liquid Air* does not fit that pattern. Quite simply, *Liquid Air* was not a "lost debt" case but a case about mitigated damages after entry of judgment. As a result, we agree with the Second Circuit and the district court that *Liquid Air* is uninstructive for the unique "lost debt" issue presented here.

Finally, HCB presents the Ninth Circuit's decision in *Uthe*, 808 F.3d at 755. But it, too, is distinguishable. The genesis of *Uthe* was the plaintiff's RICO lawsuit against two sets of defendants 20 years earlier. 808 F.3d at 757. The plaintiff had sued one group of foreign defendants and another set of domestic defendants. *Id.* The plaintiff's agreement with the foreign defendants required arbitration in Singapore, but there was no such arbitration requirement vis-à-vis the domestic defendants. *Id.* Even so, the plaintiff's RICO lawsuit against the domestic defendants was stayed for nearly 20 years, pending the outcome of the arbitration. *Id.*

The plaintiff eventually won an arbitral award against the foreign defendants as compensation "for actual losses stemming from the conspiracy," which the plaintiff had received in full at the time of the appeal. *Id.* Returning to the district court to pursue its claims against the domestic defendants, the plaintiff sought treble damages. *Id.* "The district court granted summary judgment in favor of the [domestic] Defendants, holding that an award of additional damages under RICO would violate the 'one satisfaction' rule[,] . . . an equitable principle designed to prevent double recovery of damages arising from the same injury." *Id.* But the Ninth Circuit reversed, holding that "the arbitral award did not constitute full satisfaction

of [the plaintiff's] pre-existing RICO claim," and permitting the plaintiff to pursue treble damages against the domestic defendants. *Id.*

The court's critical finding was that "[t]he Singapore arbitration was limited in scope to those claims against the Foreign Defendants arising under Singapore law, and could not fully resolve Uthe's legal claims against the [domestic] Defendants, which were pending in the federal court action." *Id.* at 760. Specifically, Singapore law did not recognize treble damages. *Id.* As a result, the arbitral award was not equivalent to a "lost debt" but rather to an incomplete recovery that did not permit the plaintiff to "pursue the full measure of its legal remedies against the [domestic] Defendants in federal court." *Id.* at 761.

When read in conjunction, *Stochastic* and *Milken* are on all fours with this case: a plaintiff sues under RICO to recover a debt; the plaintiff subsequently recovers; and the plaintiff then files an amended RICO complaint after satisfaction. In contrast, the plaintiff in *Uthe* brought its RICO claim against a distinct set of domestic defendants who were not subject to the foreign arbitral award. The plaintiff in *Uthe* did not allege a "lost debt" RICO claim against any defendant.

Instead, the court said that the plaintiff's RICO claim could proceed against the domestic defendants because "Singapore law could not provide for the resolution of Plaintiff's RICO claims, which were asserted in the original federal lawsuit." 808 F.3d at 760. The court also emphasized that the plaintiff "would have been entitled to pursue" treble damages against the domestic defendants "had the federal court action not been stayed pending the Singapore arbitration." *Id.* at 761. Moreover, the plaintiff had fought against the stay. *Id.* The court highlighted that the Singapore tribunal "could not circumscribe [the plaintiff's] rights to pursue the full measure of its legal remedies against the [domestic] Defendants in federal court," and quoted

the arbitration award as being "'without prejudice to [the plaintiff's] rights in the U.S. Action.'" *Id.* Taken together, those unique facts distinguish *Uthe* from the "lost debt" paradigm presented in this case.

Moreover, the Ninth Circuit decided the case on the one satisfaction rule, an entirely different legal principle than the question of RICO damages. As the court said, under the one satisfaction rule, "[s]atisfaction of a claim cannot occur unless the injuries sued upon are identical and the remedies available for the claims are the same." *Id.* at 761 (quoting RESTATEMENT (THIRD) OF TORTS § 25 cmt. b (2000)).

As a result, following *Uthe* instead of the Second Circuit's cases is a questionable proposition. *Uthe* is a case about the one satisfaction rule (a tort principle), the opinion does not address the injury requirement under RICO, and the Ninth Circuit did not cite *Milken* or *Stochastic*, let alone distinguish them. In addition, the plaintiff in *Uthe* received its judgment against foreign defendants, not the same defendants from whom it sought RICO damages. And, adding still more complexity, the plaintiff had been unable to pursue its RICO claims for nearly 20 years as it awaited an arbitral judgment against distinct defendants. For all these reasons, *Uthe* does little to persuade us in this context.

3.

As we have recognized, and as the RICO statute makes clear, a civil RICO claim requires a substantive RICO violation plus an injury. *Alcorn Cnty.*, 731 F.2d at 1167; 18 U.S.C. § 1964(c)). Section 1964(c) says that a person injured by a substantive RICO violation "shall recover threefold the damages he sustains." We have referred to section 1964(c)'s injury requirement as "[t]he standing provision of civil RICO." *In re Taxable Mun. Bond Sec. Lit.*, 51 F.3d at 521. All of which is to say that to survive a motion to dismiss, a civil RICO claimant must plausibly allege an injury. Or, as the

district court said it, "an injury must exist before the court will consider treble damages."

"Lost debt" cases present a unique type of claim. They allege "a RICO violation whose central purpose [i]s to prevent the collection of a claim or judgment." *Stochastic*, 995 F.2d at 1166. The substantive RICO violation *is* the act of preventing collection. And the plaintiff's injury *is* the inability to collect the lawful debt. So, when the plaintiff successfully recovers that debt, it is no longer lost. And because that unrecovered debt is the only source of the plaintiff's injury, there is no RICO claim in its absence. 18 U.S.C. § 1964(c)); *Alcorn Cnty.*, 731 F.2d at 1167; *In re Taxable Mun. Bond Sec. Lit.*, 51 F.3d at 521. As a result, a plaintiff cannot rely on its lost debt to animate a RICO suit after it has recovered that debt. The "debt is 'lost' and thereby becomes a basis for RICO trebling only if the debt (1) cannot be collected (2) 'by reason of' a RICO violation." *Stochastic*, 995 F.2d at 1165 (citing 18 U.S.C. § 1964(c)). "In other words, to the extent of a successful collection, the RICO claim is abated *pro tanto*, prior to any application of trebling." *Id.* at 1166.

This approach is consistent with our own RICO standing analysis and with the statutory text. RICO instructs a trebling of "the damages" that the plaintiff "sustains" as a result of the substantive violation. 18 U.S.C. § 1964(c). But in a "lost debt" action, the plaintiff sustains damages only to the extent he is prevented from collecting the debt. When the plaintiff recovers, he is made whole and "sustains" no damages. There must be independent damages to treble; the possibility of treble damages alone cannot confer statutory standing. As a result, we join the Second Circuit in

No. 20-50718

announcing that a civil RICO plaintiff pursuing a "lost debt" is not entitled to treble damages after recovering the debt.[6]

HCB suggests that only treble damages will make it whole. But that ignores the unique nature of the "lost debt" injury. HCB's proposal would allow a RICO claim to continue even after recovery, yet it offers no justification for abandoning our RICO standing analysis. When HCB recovered the judgment plus interest, its debt was no longer lost. The district court properly dismissed HCB's RICO claim predicated on a "lost debt" theory of injury.

B.

Next, we address HCB's argument that its RICO claim survives because it suffered "lost investment opportunity" damages.

In *In re Taxable Municipal Bond Securities Litigation*, this court said that a plaintiff's "lost opportunity to obtain a . . . loan" could not "constitute an injury that confers standing to bring a RICO cause of action." 51 F.3d at 523. Instead, we said that to establish RICO standing, a plaintiff "must prove a 'concrete financial loss,' an actual loss 'of their own money,' and 'not mere

---

[6] We have also reviewed *Grimmett v. Brown*, 75 F.3d 506, 516 (9th Cir. 1996). *Grimmett* criticized the Second Circuit's approach in *Bankers Trust* for confusing "whether there is a right to recovery . . . with the difficulty in ascertaining the scope or extent of the injury." 75 F.3d at 517 (quotation omitted). We need not consider the merits of that criticism because it does not affect the "lost debt" question we consider here. The plaintiff in *Bankers Trust* faced uncertain recovery in the parallel bankruptcy proceedings. 859 F.2d at 1105–06. In contrast, HCB recovered its full judgment plus interest. The question here is not whether we can accurately calculate HCB's injury; rather, HCB's recovery means that it suffered no injury at all. As a result, the Second Circuit's decisions in *Stochastic* and *Milken* are the closer analogs. And the Ninth Circuit's concerns in *Grimmett* about misreading *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971), are avoided.

injury to a valuable intangible property interest.'" *Id.* (quoting *Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994)) (internal quotations omitted).

Similarly, in *Price v. Pinnacle Brands*, where the plaintiffs sued a trading card manufacturer because they did not receive more valuable baseball cards in their packs, we held that "[i]njury to mere expectancy interests or to an intangible property interest is not sufficient to confer RICO standing." 138 F.3d at 607 (internal quotation omitted).

HCB claims that it lost an investment opportunity in the years between judgment and satisfaction of the $2 million damage award. It argues that it met its pleading standard by alleging an injury. But HCB does not cite a single case addressing this issue, other than those defining the well-known pleading standards. HCB does not try to distinguish *In re Taxable Municipal Bond Securities Litigation* or *Price*. Yet, those cases explain why HCB's mere reliance on the pleading standard misses the point.

As the district court observed, the issue "is not that HCB failed to plead or prove its damages, but rather that HCB's pleaded damages are either alone insufficient to confer standing under RICO or have already been remedied in the Mississippi case." Just so. As we have said about a lost opportunity to obtain a loan, *In re Taxable Mun. Bond Sec. Lit.*, 51 F.3d at 523, or not pulling Ken Griffey, Jr.'s card from a pack, *Price*, 138 F.3d at 607, "[i]njury to mere expectancy interests or to an intangible property interest is not sufficient to confer RICO standing." *Id.* HCB's shortcoming is not the way it pled its alleged loss; it is the nature of that "loss."

Moreover, HCB was made whole by the post-judgment interest awarded along with the underlying judgment. Post-judgment interest is intended "to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damages and the payment by the defendant." *Kaiser Aluminum & Chem.*

*Corp. v. Bonjorno*, 494 U.S. 827, 835–36 (1990) (quotation omitted).  That is precisely what HCB received.  It cannot point to a speculative higher rate of return to establish RICO injury.

## C.

Last, we address the district court's dismissal with prejudice because of the futility of further amendment.  The district court found that because HCB's RICO case is predicated on collection of a judgment that was already satisfied, there is nothing further that HCB could allege that would confer RICO standing.  We agree.

On this score, HCB largely abandons any attempt to revive its "lost debt" claim through amendment.  But HCB argues that it can point to a specific lost investment opportunity that it would have taken had McPherson paid the $2 million sooner.  That argument is unconvincing for all the reasons we discussed above.  HCB's pleading defect is not a lack of specificity.  Instead, HCB relies on a legal theory that this court does not recognize.  Perhaps HCB would have pursued a profitable investment.  Perhaps not.  Perhaps it would have lost money.  This type of speculation is why a plaintiff must show concrete loss.  It is also why we award post-judgment interest.  *Cf. Milken*, 17 F.3d at 612 (holding that the plaintiffs were made whole when they "recouped not only their initial investment, but also . . . [a] 10.2 percent return on their capital").  And HCB does not identify a single case supporting its theory.

The district court's dismissal with prejudice was based on a finding that HCB cannot establish an essential element of its claim: injury to its "business or property by reason of a violation of section 1962."  18 U.S.C. § 1964(c).  We agree with the district court that HCB's defect cannot be cured.  As a result, amendment is futile.  *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000) (holding that amendment is futile if "the

No. 20-50718

amended complaint would fail to state a claim" under Rule 12(b)(6) (collecting cases)). The district court did not err in dismissing HCB's amended complaint with prejudice.[7]

* * *

Because HCB recovered its "lost debt" shortly after filing suit, it is no longer lost. And because HCB points to a speculative investment return even though it received post-judgment interest, it has no legal claim to lost investment opportunity. In consequence, HCB cannot plead an essential statutory element of a RICO offense. No amendment can cure that pleading defect, so the district court did not abuse its discretion by dismissing the federal claims with prejudice or declining supplemental jurisdiction over the state-law claims.

AFFIRMED.

---

[7] As this court has said, a successful civil RICO claim to treble damages requires proof of a substantive RICO violation and an injury. *Alcorn Cnty.*, 731 F.2d at 1167. The district court found that HCB suffered no injury, so it did not reach the substantive RICO claim. Because we affirm the district court's dismissal on those grounds, we do not reach McPherson's alternative argument that HCB failed to allege a RICO enterprise.